Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Worker's Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and defendant-employer.
3. Legion Insurance Company was the carrier on risk and GAB Robins was the third-party administrator.
4. Plaintiff sustained a right arm aggravation on 14 September 1995.
5. The parties entered into a Form 21 Agreement relating to the compensable injury which was approved by the North Carolina Industrial Commission on 1 April 1996. Plaintiff's average weekly wage was $292.62 yielding a compensation rate of $195.80.
6. Plaintiff received medical care including two surgeries.
7. Plaintiff last worked for the defendant-employer-owner on or about 12 May 1996.
8. Plaintiff returned to work for another employer, AMP, Incorporated, in Gastonia, North Carolina on 17 July 1997.
9. Defendant filed a Form 28T upon plaintiff's return to work on 17 July 1997. Under the Form 28T, plaintiff began to receive payment for wage loss for her work as an assembler at AMP, Incorporated.
10. Plaintiff worked for AMP, Incorporated from 17 July 1997 to approximately 13 August 1997.
11. On 18 August 1997, plaintiff went to work for White Oak Manor, a residential retirement community. Plaintiff's duties at White Oak Manor consisted of assisting the residents as needed. Plaintiff worked for White Oak Manor from 18 August 1997 through a half-day on 22 September 1997.
12. On 22 September 1997, plaintiff went to work for Johnny's Discount. Plaintiff's job at Johnny's Discount involved cashier duties and unloading trucks.
13. Plaintiff submitted a signed Form 28U on or about 10 October 1997, disapproving her work at Johnny's Discount.
14. Upon receiving the Form 28U, defendants reinstated plaintiff's workers' compensation benefits under the Form 21.
15. As of 10 October 1997, plaintiff continues to receive temporary total disability benefits under the Form 21 Agreement and the Form 28U.
16. Plaintiff's medical records and related documentation were stipulated into evidence as Stipulated Exhibit #1. These records consist of the following:
 1) Medical Records from Miller Orthopaedic Clinic, Incorporated;
2) Medical Records from Charlotte Orthopaedic Specialists;
3) Medical Records from Arrowood Medical Center;
4) Medical Records from Carolina Medical Center;
5) the 22 August 1996 FCE Report;
 6) Reports from Southern Rehabilitation Network, Incorporated;
7) Reports from Care One Rehabilitation;
8) Reports from GAB Robins Rehabilitation;
9) Plaintiff's Answers to Defendants' Interrogatories;
10) Form 24 and Attachments;
11) related Industrial Commission Forms;
12) 14 January 1998 letter from plaintiff; and
13) Industrial Commission File Number 266866.
17. The issues before the undersigned are:
 (i) Whether plaintiff's Form 28U is valid and whether reinstatement of Workers' Compensation Benefits is appropriate under the Form 28U;
 (ii) Whether plaintiff is entitled to payment for a six percent (6%) rating of her right arm rather than her hand as a result of the compensable injury;
 (iii) Whether plaintiff elected her wage loss under the Form 28T;
 (iv) Whether plaintiff's current right wrist condition is related to her compensable injury;
 (v) Whether plaintiff is entitled to additional medical treatment including a third surgery;
 (vi) Whether plaintiff may adjudicate additional benefits for her 1992 left wrist claim in this hearing.
 ***********
Based upon all of the competent evidence in the record, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years old and had two daughters, ages 24 and 18.
2. Plaintiff completed the twelfth grade.
3. On 8 July 1991, plaintiff began working for defendant-employer as a lab worker on a cutting machine.
4. In September 1992, plaintiff injured her left wrist, which is the subject of Industrial Commission File Number 266866.
5. On 14 September 1995, plaintiff was employed in the accounting department for the defendant-employer. Plaintiff sustained a compensable right wrist injury when she felt a pop in her right wrist while picking up a file from under her desk.
6. Physicians at Arrowood Medical Center originally saw plaintiff for treatment of this injury. Plaintiff's initial diagnosis was DeQuarvains stenosis and tenosynovitis. Plaintiff was referred to W. Alan Ward, M.D., Miller Orthopaedic Clinic.
7. Plaintiff presented to Dr. Ward on 29 September 1995 with complaints of increasing symptoms of pain in her right hand and arm. Dr. Ward diagnosed plaintiff with intersection syndrome, DeQuarvains stenosis and tenosynovitis.
8. On 24 October 1995, plaintiff underwent a release of her right wrist. While out of work for surgery and recovery, plaintiff received payment of the appropriate temporary total disability payments.
9. On 12 May 1996, plaintiff was laid off from her former employment with the defendant-employer as a result of the downsizing and buy out of the defendant-employer's business.
10. On 15 July 1996, plaintiff returned to Dr. Ward. Dr. Ward determined plaintiff was at maximum medical improvement and gave plaintiff a six percent (6%) permanent partial disability rating. Dr. Ward determined that plaintiff could return to modified work beginning 15 July 1996. Dr. Ward restricted plaintiff to no lifting or pulling over ten pounds.
11. On 22 August 1996, a Functional Capacity Evaluation (FCE) was performed. The Functional Capacity Evaluation indicated that plaintiff had profound left wrist dysfunction but that she could return to sedentary work.
12. On 16 October 1996, plaintiff returned to Dr. Ward complaining of progressive discomfort in her right wrist since her last visit. Dr. Ward diagnosed synovitis of the right wrist with persistent pain. Dr. Ward recommended arthroscopic synovectomy of the right wrist.
13. On 8 November 1996, plaintiff underwent arthroscopic synovectomy and debridement of TFCC tear on the right wrist.
14. On 9 December 1996, Dr. Ward indicated plaintiff could return to modified duties beginning 2 January 1997 with the restriction of no lifting over ten pounds with the right hand.
15. On 6 January 1997, plaintiff returned to Dr. Ward, who released her to perform her regular accounting job. Dr. Ward determined that plaintiff had sustained a six percent (6%) permanent partial disability rating to her right hand as a result of her surgeries.
16. In April 1997, plaintiff returned to Dr. Ward indicating that she had not been working since her last visit. Dr. Ward suggested plaintiff continue looking for a job doing office work. Plaintiff was restricted to lifting no more than ten pounds on a repetitive basis and a maximum of twenty pounds with the right hand.
17. On 17 July 1997, plaintiff returned to work for AMP, Incorporated, as an assembler. Plaintiff described her job as production work involving repetitive hand motion. The job consisted of four individuals at a table who placed computer parts together on a repetitive basis. Plaintiff was earning approximately $6.40 per hour for this job.
18. On 13 August 1997, plaintiff returned to Dr. Ward with complaints of swelling and pain in her right wrist. Dr. Ward directed plaintiff not to work where repetitive motion was required. Dr. Ward further indicated plaintiff had reached maximum medical improvement.
19. On 18 August 1997, plaintiff began working for White Oak Manor, a nursing home facility. While employed with White Oak Manor, plaintiff played games with the residents, assisted with shelling of vegetables, fed the residents, lifted residents in and out of chairs, and pushed wheelchairs to the residents' rooms. Plaintiff continued to experience pain in her wrist, and she ended her employment approximately after two months.
20. On 22 September 1997, plaintiff became employed by Johnny's Discount.
21. At Johnny's Discount, plaintiff worked as a cashier for approximately two hours per day. During the remaining six hours of the day, plaintiff unloaded trucks and stocked inventory such as VCRs, TVs, and lawnmowers. Plaintiff continued to experience pain and terminated her employment two days later on 24 September 1997.
22. On 8 October 1997, plaintiff returned to Dr. Ward with complaints of pain in her right wrist.
23. Plaintiff submitted a Form 28U to Dr. Ward for his signature. Dr. Ward completed the Form 28U, which was received by the defendants on 10 October 1997. Plaintiff's temporary total disability was reinstated as of 10 October 1997.
24. At the time of the evidentiary hearing, plaintiff had not returned to work after leaving Johnny's Discount and had received no vocational rehabilitation since the summer of 1997.
25. Plaintiff desires a third surgery for her right wrist. An independent medical examination was scheduled with David DuPuy, M. D., on 28 October 1997. Dr. DuPuy indicated that there is no certainty the third surgery would improve her circumstances. Dr. DuPuy believed that the nursing home position was within plaintiff's capabilities and that she could return to that job.
26. In January 1998, plaintiff returned to Dr. Ward. Dr. Ward could not determine that plaintiff would benefit from another surgery.
27. Dr. Ward found that plaintiff could perform left-handed work, using the right hand to assist, and that she could not lift more than ten to twenty pounds with the right hand. Plaintiff should also avoid repetitive motion.
28. Plaintiff has made good faith efforts to try to obtain work based on her understanding of her circumstances. Plaintiff is entitled to a trial return to work following her return to restricted work.
29. Dr. Ward was aware of the three jobs plaintiff attempted when he signed the Form 28U.
30. On 25 February 1998, plaintiff returned to Dr. Ward indicating that she still had pain and swelling in her right wrist. Plaintiff requested a new neutral wrist splint and Dr. Ward provided plaintiff with a splint.
31. On 4 March 1998, Dr. Ward indicated that plaintiff needs to remain in her splint while at work. Plaintiff remains on the previous restrictions which included no lifting more than ten pounds on a repetitive basis and no more than twenty pounds with her right hand.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 14 September 1995. G.S. § 97-2(6).
2. Plaintiff is entitled to a nine month trial return to work upon her return to restricted work. G.S. § 97-32.1.
3. The Form 28U Request That Compensation Be Reinstated After Unsuccessful Trial Return To Work was not rendered invalid because it involved an employer different from the employer identified on the Form 28T Notice of Termination of Compensation By Reason of Trial Return to Work.
4. Plaintiff would not benefit from a subsequent surgery. G.S. § 97-25.1.
5. Plaintiff would benefit from vocational rehabilitation. G.S. § 97-25.
6. Plaintiff may elect to receive the permanent partial disability rating pursuant to G.S. § 97-31 or, if subsequent employment involves a wage loss, partial payment compensation under G.S. § 97-30.
7. At the time of the hearing before the Deputy Commissioner, sufficient grounds did not exist for terminating or suspending plaintiff's compensation. G.S. § 97-18.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's request for payment for a third surgery on her right wrist is DENIED.
2. If defendants provide vocational rehabilitation on behalf of the plaintiff, plaintiff is to comply with all reasonable vocational services.
3. Defendants shall pay the costs.
 S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
RCR:mcl